1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CORNEL JACKSON,                              Case No.  1:24-cv-00034-HBK (PC)

12                 Plaintiff,                     ORDER TO RANDOMLY ASSIGN A
                                                  DISTRICT JUDGE
13          v.
                                                  FINDINGS AND RECOMMENDATIONS TO
14   MANUEL PEREZ, CHRIS RODRIGUEZ,               DISMISS CASE[1]
     TYSON POUGE, BENJAMIN
15   MENDOZA, COUNTY OF MADERA,                   (Doc. No.  6)

16                 Defendants.                    FOURTEEN-DAY OBJECTION PERIOD

17

18          Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's First

19   Amended Complaint.  (Doc. No. 6, "FAC").  For the reasons set forth below, the undersigned

20   recommends the district court dismiss the FAC because it fails to state any cognizable federal

21   claim.

22                            **SCREENING REQUIREMENT**

23          A plaintiff who commences an action while in prison is subject to the Prison Litigation

24   Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

25   against a governmental entity, its officers, or its employees before directing service upon any

26   defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2023).

1 | dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon
2 | which relief may be granted, or if it seeks monetary relief from a defendant who is immune from
3 | such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

4 |     At the screening stage, the court accepts the factual allegations in the complaint as true,
5 | construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.*
6 | *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.
7 | 2003).  The Court's review is limited to the complaint, exhibits attached, materials incorporated
8 | into the complaint by reference, and matters of which the court may take judicial notice.  *Petrie v.*
9 | *Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  A court
10 | does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted
11 | deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical
12 | to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See*
13 | *Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

14 |     The Federal Rules of Civil Procedure require only that a complaint include "a short and
15 | plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).
16 | Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient
17 | factual detail to allow the court to reasonably infer that each named defendant is liable for the
18 | misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,
19 | 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not
20 | sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.
21 | *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not
22 | required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
23 | statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required
24 | to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.
25 | 2009) (internal quotation marks and citation omitted).

26 |     If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant
27 | is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*
28 | *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how to cure the defects.  Such advice "would undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

Plaintiff, a county jail pretrial inmate proceeding pro se and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  On March 20, 2024, the undersigned screened Plaintiff's initial complaint and found that it failed to state any cognizable constitutional claim.  (*See* Doc. No. 5).  Because the allegations raised in the Complaint appeared duplicative of those already adjudicated in the related case *Jackson v. Quick*, E.D. Cal. Case No. 1:19-cv-01591-EPG, the Court directed Plaintiff to show cause why his claims arising from events during the time frame 2018-2020 should not be barred by issue preclusion.  (*Id*. at 4-6).  The Court advised Plaintiff of additional pleading deficiencies and applicable law and afforded Plaintiff the opportunity to file an amended complaint.  (*Id*.). Plaintiff timely filed a first amended complaint.  (Doc. No. 6) ("FAC").

The events in the FAC took place at Madera County Jail ("MCJ").  (*See generally id*.). The FAC names as Defendants (1) the County of Madera, and the following MCJ staff: (2) Chief Manuel Perez; (3) Chief Tyson Pogue[2]; (4) Captain Chris Rodriguez; and (5) Sergeant Benjamin Mendoza.  (*Id*. at 2-3).  The FAC alleges various claims under the First, Sixth, and Fourteenth Amendments, and pursuant to unspecified "M.C.D.C. and Madera County Jail Rules and Regulations, California Penal Code Sections, California Civil Codes, [and] State and Federal Constitutional Amendments."  (*See id*. at 19).  The following facts are presumed to be true at this stage of the screening process.

---

[2] The FAC refers to Defendant as "Tyson Pouge," however the Court infers that Plaintiff means to name Tyson Pogue, the Sheriff of Madera County.

1    After Plaintiff was booked into MCJ on March 12, 2018 as a pretrial detainee, he began

2    corresponding by mail with his defense attorney.  (*Id.* at 3).  Unspecified mailroom/classification

3    staff at MCJ began "opening/photocopying and turning over" to the prosecution Plaintiff's legal

4    mail "to assist the prosecutor in gaining an unfair advantage against [Plaintiff] in his pending

5    criminal case."  (*Id.* at 3).  Plaintiff raised the issue of mail tampering to various officials at MCJ,

6    including Defendants Mendoza and Rodriguez, and filed multiple grievances throughout 2018

7    and 2019, without success.  (*Id.* at 4-6).  Plaintiff then filed an earlier federal lawsuit in 2019

8    based on the mail tampering and officials' failure to remedy the problem.  *See Jackson v. Quick*,

9    E.D. Cal. Case No. 1:19-cv-01591-EPG, Doc. No. 122 at 8-9) ("the *Quick* case").  Plaintiff

10   acknowledges he included claims of mail tampering from September 2018 to May 2020 in the

11   *Quick* case.  (Doc. No. 6 at 6); (*see also Jackson v. Quick*, E.D. Cal. Case No. 1:19-cv-01591-

12   EPG, Doc. No. 122 at 8-9).

13   While Plaintiff was litigating his case, mailroom and classification staff continued to open

14   his legal mail outside of his presence with impunity.  (Doc. No. 6 at 6-9).  Plaintiff filed

15   grievances throughout 2020 and 2021 alleging constitutional violations based on the alleged mail

16   tampering.  (*Id.* at 8-9).  The FAC contends that "Defendants Sgt. Mendoza, Cpt. Rodriguez, and

17   Chief Perez were all put on notice and informed of jail staff's continuous violations through

18   reports/calls/appeals/grievances/and civil rights complaints."  (*Id.* at 9).  Further, Plaintiff avers

19   that Defendant Pogue would have been aware of these violations when he became the County

20   Sheriff in March 2021, and is thus liable for the violations that allegedly continued into his tenure

21   as Sheriff.  (*Id.*).  The FAC does not allege specific instances of mail tampering after 2020, other

22   than one instance where a piece of mail from Plaintiff's attorney, dated 10/11/23, was opened

23   outside of his presence and Plaintiff found it "placed in his property."[3]  (*Id.*).

24   The FAC also alleges, in a seemingly unrelated incident, that on January 17, 2024,

25   Sheriff's Deputies conducted a search of his jail cell while he was working on a motion related to

26   *Jackson v. Quick* and they confiscated materials related to the motion, which caused Plaintiff to

27   _____

28   [3] The FAC also references various occasions that he filed grievances regarding mail tampering in 2020 and
2021 but does not describe the specific instances of mail tampering.  (See Doc. No. 6 at 8).

miss a filing deadline and ultimately suffer prejudice at trial.  (*Id*. at 10).  Plaintiff brought these allegations to the trial court's attention, but it denied any relief.[4]

Liberally construed, the FAC alleges that Defendant County of Madera had the authority to prevent the constitutional violations he was suffering at MCJ but failed to correct them, despite knowing of a "long history of official misconduct and illegal treatment [of] prisoners [at the Madera County Department of Corrections] that spans decades [and] has infact [sic] become a traditional method of carrying out the customs."  (*Id*. at 12).

The FAC similarly alleges supervisory liability claims against Defendants Perez and Pogue for failing to take reasonable measures to protect Plaintiff from the constitutional violations of their subordinates, including failure to train them, and for condoning a culture of impunity for MCDC staff.  (*Id*. at 13-16).  The FAC likewise alleges supervisory claims against Defendants Rodriguez and Mendoza for failing to address the ongoing constitutional violations Plaintiff has suffered at MCJ despite being aware of them, and for contributing to a "culture of lawlessness" among officers at MCJ.  (*Id*. at 16).

Finally, the FAC alleges that each Defendant violated unspecified "M.C.D.C. and Madera County Jail Rules and Regulations, California Penal Code Sections, California Civil Codes, [and] State and Federal Constitutional Amendments."  (*See id*. at 19).

As relief, Plaintiff seeks compensatory damages of $100,000 from each Defendant, punitive damages of $100,000 from each Defendant, general damages of $100,000 from each Defendant, nominal damages of $100,000 from each Defendant, or alternatively a jury trial on all issues.  (*Id*. at 20).

## APPLICABLE LAW AND ANALYSIS

### A.  First Amendment Interference with Mail

Prisoners have a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  A prison may nonetheless regulate mail in ways that impinge on that right if such regulation is reasonably related to legitimate penological interests, such as

---

[4] (*See* Doc. No. 171 *in Jackson v. Quick*, E.D. Cal. Case No. 1:19-cv-01591-EPG).

5

safety, order, and rehabilitation.  *Id.*  Prison officials may examine an inmate's mail without

infringing his rights, *United States v. Wilson,* 447 F.2d 1, 8 n. 4 (9th Cir.1971), and inspect non-

legal mail for contraband outside the inmate's presence.  *Witherow,* 52 F.3d at 265–66 (upholding

inspection of outgoing mail).

Liberally construed, Plaintiff's FAC alleges that mailroom and classification staff at MCJ

tampered with his mail and that Defendants failed to prevent it or hold the wrongdoers

accountable.

> 1.  Mail Tampering Prior to May 2020

Because these allegations were already the subject of Plaintiff's claims in *Jackson v.*

*Quick,* this Court previously directed Plaintiff to show cause why those claims pertaining to the

period between September 2018 to May 2020 should not be barred by issue preclusion.  (*See* Doc.

No. 5 at 5).  In the FAC, Plaintiff acknowledges that he previously asserted these claims in

*Jackson v. Quick* but does not articulate any reason why they should not now be barred by issue

preclusion.  (*See* Doc. No. 6 at 6).

The Ninth Circuit recognizes that "[a] court is permitted to raise preclusion doctrines *sua*

*sponte.*"  *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997), citing *McClain v. Apodaca,*

793 F.2d 1031, 1032–34 and n. 2 (9th Cir.1986).  Issue preclusion is applicable where there is (1)

an identity of issues, (2) a final judgment on the merits, and (3) identity or privity between the

parties against whom preclusion is asserted. *See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd*.,

475 F.3d 1080, 1086 (9th Cir. 2007).

In the *Quick* case, Plaintiff ultimately proceeded to trial on his claim that MCJ mailroom

staff Lisette Lopez, Dominic Ramos, Hermina Marley, and Carmela Prudente, correctional staff

Alvaro Rossette and Elizabeth Alvarez, and supervisors Jim Followill and Jayson Quick opened

Plaintiff's legal mail outside of his presence in violation of the First Amendment.[5]  (*See* Doc. No.

146).  After a jury trial, Defendants made a Rule 50 motion for judgment as a matter of law,

---

[5] Plaintiff's operative Second Amended Complaint in the *Quick* case also alleged the involvement of supervisor
Benjamin Mendoza, who is a Defendant in this action, but all claims against Mendoza were dismissed by the District
Court.  (*See* Doc. No. 30 in *Jackson v. Quick*, E.D. Cal. Case No. 1:19-cv-01591-EPG).

1    which the Court granted.[6]  (*See* Doc. No. 202).

2            Here, all three conditions for issue preclusion are thus met:  Plaintiff asserted the same

3    allegations concerning MCJ staff conduct between September 2018 and May 2020, the judge in

4    the *Quick* case found those claims legally insufficient after a trial, and the party against whom

5    preclusion applies (i.e. Plaintiff) is the same in both actions.  Plaintiff here essentially is

6    attempting to relitigate his First and Sixth amendment claims against the *Quick* defendants'

7    supervisors after the Quick defendants were granted judgment in their favor after trial.

8    Accordingly, the Court finds that Plaintiff's claims based on mail tampering by MCJ staff from

9    September 2018 to May 2020 are barred by issue preclusion.

10                          2.  Mail Tampering After May 2020

11           As to Plaintiff's claims of mail tampering that occurred after May 2020, the FAC only

12   names supervisors with no direct involvement in the underlying misconduct as defendants.  These

13   claims fail for the reasons discussed below.

14       **B.  Grievance Process**

15           As the Court previously advised Plaintiff in its initial screening order, inmates lack a

16   constitutional right to a specific grievance procedure and there are no constitutional requirements

17   regarding how a grievance system is operated, even if a plaintiff believes the process to be unfair

18   or not accurate. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855

19   F.2d 639, 640 (9th Cir. 1988).  Liberally construed, the FAC, like the Complaint, alleges that

20   Defendants Mendoza, Rodriguez, and Perez repeatedly denied or ignored Plaintiff's grievances

21   and verbal complaints regarding the alleged tampering with his legal mail by the mailroom and

22   classification staff.  (*See generally* Doc. No. 6).  However, as the Court explained previously,

23   Defendants' respective roles in Plaintiff's administrative appeal are not a legitimate basis for

24   liability under § 1983.  *See Penton v. Johnson*, 2019 WL 6618051, at *6 (E.D. Cal. Dec. 5, 2019)

25   ("Moreover, a prison official's denial of a grievance does not itself violate the constitution . . . .

26   'An allegation that a prison official inappropriately denied or failed to adequately respond to a

27   _____

28   [6] The Court notes that Plaintiff's appeal of the judgment dismissing his case remains pending before the
     Ninth Circuit Court of Appeals.  (*See Jackson v. Quick et al.*, No. 24-1740).

                                            7

1   grievance, without more, does not state a claim under § 1983.'") (quoting *Evans v. Skolnik*, 657 F.

2   App'x 285, 288 (9th Cir. 2015).  To the extent the FAC alleges that these Defendants denied or

3   ignored Plaintiff's grievances and verbal complaints, it fails to state a cognizable due process

4   claim on that basis alone.

5       **C. Supervisory Liability**

6       Under section 1983, "[g]overnment officials may not be held liable for the

7   unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556

8   U.S. at 676.  Thus, to show that a supervisor is liable for a constitutional violation, a plaintiff may

9   not rely on the alleged misconduct of the supervisor's subordinates; rather, he "must plead that

10   each Government-official defendant, through the official's own individual actions, has violated

11   the Constitution." *Id.*

12       "A supervisory official is liable under § 1983 [if] there exists either (1) his or her personal

13   involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

14   supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. Cty. of Los*

15   *Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citations omitted). "The

16   requisite causal connection can be established . . . by setting in motion a series of acts by . . . or

17   by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or

18   reasonably should have known would cause others to inflict a constitutional injury." *Starr v.*

19   *Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal quotation marks and citations omitted).

20   "Thus, a supervisor may be liable in his individual capacity for his own culpable action or

21   inaction in the training, supervision, or control of his subordinates; for his acquiescence in the

22   constitutional deprivation; or for conduct that showed a reckless or callous indifference to the

23   rights of others." *Rodriguez*, 891 F.3d at 798 (internal quotation marks and citations omitted).

24       Liberally construed, the FAC alleges that Defendants Mendoza, Rodriguez, Perez and

25   Pogue are liable for the constitutional violations committed by their subordinates because "as

26   soon as the Marshals served the Defendants at the jail [with Plaintiff's summons and complaint in

27   *Jackson v. Quick*] Defendants Sgt. Mendoza, Cpt. Rodriguez and Chief Perez was [sic] put on

28   notice of the constitutional violations as well as . . . the facts [sic] that the violations were

ongoing." (*Id*. at 8).  As to Defendant Pogue, who became Chief of MCJ in March 2021, the FAC alleges that he "had full knowledge of the jail staff's continuous constitutional violations" and that he deliberately failed to implement protective measures to stop the violations.  (*Id*. at 9).

As noted above, however, the judge in the *Quick* case found insufficient evidence of any constitutional violation by MCJ's staff related to mail tampering.  Thus, the FAC cannot establish that these Defendants knew or should have known of constitutional violations by their staff based on Plaintiff's lawsuit or his filing of various grievances alone.  Without alleging facts to suggest such knowledge, the FAC fails to allege a cognizable Eighth Amendment deliberate indifference claim against the supervisory Defendants.

### D.  Failure to Train

An individual supervisory defendant can be liable for failure to train under the Eighth Amendment when, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] . . . can reasonably be said to have been deliberately indifferent to the need."  *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  The facts must allege that the failure to train was the result of "'a "deliberate" or "conscious" choice' to 'follow a course of action . . . from among various alternatives[.]'" *Clement*, 298 F.3d at 905 (quoting *City of Canton*, 489 U.S. at 389).  *See White v. Golden State Eye Center*, 2009 WL 817937, *6 (E.D. Cal. 2009) (identifying elements of a claim for failure to train).  Finally, the supervisor's failure to train must result in the violation of the plaintiff's constitutional rights to impose liability on the supervisor.  *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

Liberally construed, the FAC alleges that Defendants Perez, Pogue, Rodriguez, and Mendoza's failure to train their subordinates resulted in his mail being tampered with by mailroom and classification staff.  (Doc. No. 6 at 17).  Other than this conclusory assertion, the FAC contain no facts to support the inference that the need for more or better training of the mailroom and classification staff was apparent "and the inadequacy was so obvious" that these supervisors can be considered deliberately indifferent to the need.  *Clement*, 298 F.3d at 905.

Indeed, there are no facts concerning the training or lack of training of the mailroom and classification staff, or the supervisors' knowledge thereof.  Accordingly, the FAC fails to allege a cognizable Eighth Amendment claim on that basis.

////

**E.  Related Claims and Joinder**

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added).  But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

The FAC alleges that as a result of a cell search on January 17, 2024, Plaintiff lost access to his legal files and was unable to timely submit evidence in the *Quick* case that might have defeated the defense's Rule 50 Motion for Judgement as a Matter of Law.  (Doc. No. 6 at 10). While broadly related to Plaintiff's claims of mail tampering, this incident involving unidentified Sheriff's Deputies does not arise out of the "same transaction, occurrence or series of transactions

1   or occurrences" as those giving rise to Plaintiff claims that MCJ supervisors failed to supervise

2   their staff and permitted mail tampering.  Accordingly, the Court finds the claim misjoined under

3   the federal rules and cannot proceed in this lawsuit.

4   ////

5   **F.  Monell Claim**

6   Liberally construed, the FAC again asserts a *Monell*[7] claim against Defendant County

7   of Madera based on failure to train or supervise its employees. (Doc. No. 6 at 17 ¶ 7).  To state a

8   claim against a municipality under *Monell*, Plaintiff must adequately allege an underlying

9   constitutional violation by a County employee.  *Scott v. Heinrich*, 39 F.3d 912, 916 (9th Cir.

10  1994) ("municipal defendants cannot be held liable because no constitutional violation

11  occurred"); *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims

12  . . . require a plaintiff to show an underlying constitutional violation."). As set forth

13  herein, the Court finds no underlying violation has been adequately pled; and thus, Plaintiff

14  cannot state a *Monell* claim against Defendant County of Madera.

15  **F. State and Municipal Law Claims**

16  Finally, the FAC again asserts claims based on violation of unspecified "M.C.D.C. and

17  Madera County Jail Rules and Regulations, California Penal Code Sections[8], California Civil

18  Codes, [and] State and Federal Constitutional Amendments." (Doc. No. 6 at 19).  These claims

19  fail for multiple reasons.

20  Although the Court may exercise supplemental jurisdiction over state law claims, a

21  plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.  As

22  Plaintiff has failed to state a cognizable claim for relief under federal law, the Court has no basis

23  to exercise supplemental jurisdiction.  Moreover, Plaintiff has again cited no specific state laws

24  that Defendants allegedly violated, thus the Court has no basis to evaluate these allegations, much

25

26  [7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

27  [8] As a private party, Plaintiff has no standing to prosecute a criminal action against Defendants.  *See Shove v. Brown*, 2013 WL 1999216, at *3 (N.D. Cal. May 13, 2013) citing *Linda R.S. v. Richard D.*, 410

28  U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

1  less find a legal claim.  And finally, Plaintiff fails to allege any specific facts that amount to state

2  law violations. Instead, he merely incorporates by reference the preceding 18 pages of factual

3  allegations, which is insufficient to allege a cognizable claim.  Accordingly, the FAC fails to

4  adequately allege a claim based on state or municipal law violations.

5  **CONCLUSION AND RECOMMENDATION**

6        Based on the above, the undersigned finds Plaintiff's First Amended Complaint fails to

7  state any cognizable claim.  The FAC suffers from many of the same pleading deficiencies that

8  the undersigned identified and explained to Plaintiff in screening his original Complaint.  Plaintiff

9  reasserted many of the same claims that were asserted in his Complaint, including his supervisory

10  liability claims against MCJ supervisors and his Monell claim against the County of Madera.

11  Despite being provided with guidance and the appropriate legal standards, Plaintiff was unable to

12  cure the deficiencies identified above.  A plaintiff's repeated failure to cure a complaint's

13  deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to

14  plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and

15  internal quotation marks omitted).  Thus, the undersigned recommends that the district court

16  dismiss the FAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir.

17  2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny

18  leave to amend is particularly broad where court has afforded plaintiff one or more opportunities

19  to amend his complaint).

20        ACCORDINGLY, it is **ORDERED**:

21        The Clerk of Court randomly assign this case to a district judge for consideration of these

22  Findings and Recommendation.

23        It is further **RECOMMENDED**:

24        The First Amended Complaint (Doc. No. 6) be dismissed under § 1915A for failure to

25  state a claim and this case be dismissed.

26  **NOTICE TO PARTIES**

27        These Findings and Recommendations will be submitted to the United States District

28  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

1    after being served with a copy of these Findings and Recommendations, a party may file written

2    objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned,

3    "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

4    **(15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

5    wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its

6    CM/ECF document and page number, when possible, or otherwise reference the exhibit with

7    specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by

8    the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

9    636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the

10    waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    October 31, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

13